**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| BIRCH COMMUNICATIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> CENTURYLINK COMMUNICATIONS, LLC, <br><br> Defendant. | Civil Action No. _____ |

**COMPLAINT**

Plaintiff Birch Communications, Inc. ("Birch"), by its undersigned counsel, brings this Complaint against CenturyLink Communications, LLC ("CenturyLink") and alleges as follows:

**INTRODUCTION**

1. This is a collection action against CenturyLink arising from CenturyLink's unlawful refusal to pay three types of tariffed charges for telecommunications services rendered by Birch to CenturyLink in the nine-state BellSouth region:

   a. toll-free database query charges ("8YY Charges");

   b. the remote switch component of interstate and intrastate switched access service charges ("Remote/host Charges"); and

   c. presubscribed interexchange carrier charges ("PICC").

**PARTIES**

2. Birch is a Georgia corporation with its principal place of business in Atlanta, Georgia. It is a competitive local exchange carrier ("CLEC") that provides interstate and intrastate exchange access service, as well as local, long distance and enhanced services to business telecommunications customers.

3. Upon information and belief, CenturyLink is a Delaware corporation with its principal place of business in Denver, Colorado. CenturyLink is an interexchange carrier ("IXC"), a CLEC, and a common carrier subject to the federal Communications Act of 1934, as amended ("Communications Act").

## JURISDICTION AND VENUE

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. §§ 206 and 207. This court also has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) on the basis that Birch and CenturyLink are citizens of different states, and the amount in controversy exceeds $75,000. This Court has supplemental jurisdiction over Birch's state law claims pursuant to 28 U.S.C. § 1367(a).

5. This Court has personal jurisdiction over CenturyLink because, upon information and belief, CenturyLink's state of domicile is in this district.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) based upon, on information and belief, CenturyLink's residence and amenability to personal jurisdiction in this district.

## FACTUAL ALLEGATIONS

7. Birch provides tariffed services to CenturyLink in forty-two states. There are no billing disputes between Birch and CenturyLink of which Birch is aware as respects thirty-three of those states, notwithstanding that Birch has been billing CenturyLink, and CenturyLink has been paying such invoices, for 8YY Charges and switched access services (including the Remote/host Charges) in those thirty-three states. CenturyLink in nine states (Alabama, Florida, Georgia, Kentucky, Louisiana, Mississippi, North Carolina, South Carolina and Tennessee – the "BellSouth Region"), however, has been not paying Birch in full for tariffed 8YY Charges and

tariffed switched access service charges (including the Remote/host Charges), and has stopped paying Birch altogether for tariffed PICC amounts. Established precedent from the Federal Communications Commission ("FCC") precludes telecommunications carriers such as CenturyLink from engaging in self-help and short-paying invoices for telecommunications services pursuant to tariff or contract. *See, e.g.*, *NOS Communications, Inc., Complainant v. American Telephone and Telegraph Company, Defendant*, 7 F.C.C.R. 7889, ¶ 2 (1992); *MCI Telecommunications Corporation*, 62 F.C.C.2d 703 (1976).

### A. 8YY Charges

8. Birch's 8YY Charge is set forth in the Access Services Tariff of Birch Communications, Tariff FCC No. 1 ("FCC Access Tariff") and has been in place since at least October 24, 2008. When a toll-free call is originated, Birch must query the 8YY database to determine to which IXC the toll-free call should be routed. The $0.0075 8YY Charge applies to each query Birch performs. No other carrier-customer besides CenturyLink has challenged Birch's 8YY Charges, and CenturyLink has not challenged and has been paying Birch's 8YY Charges in full in thirty-three states outside the BellSouth Region.

9. Since July 2012, CenturyLink has been "short-paying" Birch for invoiced 8YY Charges, and has only paid a portion of the invoiced 8YY Charges. Through invoices dated August 8, 2017, CenturyLink's unpaid 8YY Charges total approximately $113,478.45 (including interest and late fees).

### B. *Remote/host Charges*

10. The Birch charges for interstate and intrastate switched access service include an additive to reflect the cost of routing traffic through a remote switch. The additive used is determined by an independent consultant (Technologies Management, Inc., "TMI") for Birch and a large number of other CLECs. Birch does not determine its interstate or intrastate switched access service rates based on individual components and actual mileage to the remote switch as an incumbent local exchange carrier ("ILEC") may do. As a CLEC, it is permitted by the FCC to use a composite rate as a proxy to reflect that some traffic will be routed to a remote switch because it does not have the facility-based network the ILEC does. Specifically, Birch uses a 35% Remote/host Charge additive nationwide. TMI used an industry-standard methodology to determine the percentage.

11. The Birch interstate switched access service rates incorporating the 35% Remote/host Charge additive were filed in the Birch FCC Access Tariff (§ 5.4.3) on 15-day notice and, thus, are "deemed lawful" under 47 U.S.C. § 204(a)(3).

12. The Birch intrastate switched access service rates incorporating the 35% Remote/host Charge additive are set forth in the Birch intrastate access tariffs filed with the state public utility commissions in eight of the nine states in the BellSouth Region. The same additive was used in the ninth state, North Carolina, but the North Carolina Utilities Commission does not require the filing of tariffs by competitive carriers.

13. No other Birch carrier-customer besides CenturyLink has challenged the Remote/host Charge component of Birch's interstate or intrastate switched access service rates, and CenturyLink has not challenged and has been paying in full Birch's interstate and intrastate

switched access service rates (including the Remote/host Charge component) in thirty-three states outside the BellSouth Region.

14. Since July 2012, CenturyLink has been "short-paying" Birch for invoiced interstate switched access service charges that include the 35% Remote/host Charge additive in the BellSouth Region, and has only paid a portion of the invoiced interstate switched access service charges. Through invoices dated August 8, 2017, CenturyLink's unpaid interstate switched access service charges total approximately $187,248.49 (including interest and late fees).

15. Commencing with invoices dated March 8, 2017, CenturyLink also started "short-paying" Birch's invoiced intrastate switched access service charges that include the 35% Remote/host Charge additive in the BellSouth Region, and has only paid a portion of the invoiced intrastate switched access service charges. Through invoices dated August 8, 2017, CenturyLink's unpaid intrastate switched service access charges total approximately $6,910.16 (including interest and late fees).

### C. PICC

16. The PICC specifically is authorized by the FCC at 47 C.F.R. § 69.153. It is to be expressed as a flat per-line, per-month charge to allow telecommunications carriers to recover their costs from a multi-line business subscriber's presubscribed interexchange carrier; the flat-rate charge is intended to reflect the way service costs are incurred by Birch and other service providers. *Access Charge Reform*, 12 F.C.C.R. 16606 ¶¶ 5-6, 16 (1997); *Defining Primary Lines*, 14 F.C.C.R. 4205, ¶¶ 7, 9 (1999). The PICC is capped by regulation at $4.31 per-line per-month.

17. The Birch PICC is $2.50 per-line, per-month, applies to interexchange carriers with presubscribed multi-line business subscribers, and the charge has been in the Birch FCC Access Tariff since at least 2008. Several CLECs that compete with Birch also include a PICC in their FCC access tariffs.

18. Until December 2016, CenturyLink paid Birch for invoiced PICC. Commencing in January 2017, however, CenturyLink ceased paying these charges. Through invoices dated August 8, 2017, CenturyLink's unpaid PICCs total approximately $1,086,933.28 (including interest and late fees).

## COUNT I

### (Breach of Interstate Tariff)

19. Birch repeats, realleges, and incorporates herein by reference each and every allegation contained in paragraphs 1 to 18 of this Complaint as if fully set forth herein.

20. Birch has provided interstate 8YY database query services to CenturyLink. CenturyLink is required to pay the 8YY Charges as set forth in the Birch FCC Access Tariff. Despite due demand, CenturyLink has failed to pay in full the 8YY Charges that it owes under the Birch FCC Access Tariff and the associated interest and late fees.

21. Birch has provided interstate switched access services to CenturyLink. CenturyLink is required to pay the interstate switched access service charges as set forth in the Birch FCC Access Tariff. Despite due demand, CenturyLink has failed to pay in full the interstate switched access service charges that it owes under the Birch FCC Access Tariff and the associated interest and late fees.

22. Birch has provided switched access service to CenturyLink, which has permitted CenturyLink to provide long distance services to its presubscribed business customers.

CenturyLink is required to pay the PICC as set forth in the Birch FCC Access Tariff. Despite due demand, CenturyLink has failed to pay the PICCs it owes under the Birch FCC Access Tariff and the associated interest and late fees.

23. Birch has been, and continues to be, damaged by CenturyLink's refusal to pay the interstate 8YY Charges, switched access service charges, and PICCs CenturyLink owes, plus interest and late fees as called for in the Birch FCC Access Tariff. Birch is entitled to recover these amounts or such other damages as may be established at trial.

## COUNT II

### (Section 203 of the Communications Act)

24. Birch repeats, realleges, and incorporates herein by reference each and every allegation contained in paragraphs 1 to 23 of this Complaint as if fully set forth herein.

25. CenturyLink is required to pay Birch's interstate 8YY Charges, switched access service charges, and PICCs as set forth in the Birch FCC Access Tariff. Despite due demand, CenturyLink has failed to pay the interstate 8YY Charges, switched access service charges, and PICCs CenturyLink owes under the Birch FCC Access Tariff and the associated interest and late fees.

26. Section 203 of the Communications Act, 47 U.S.C. § 203, imposes upon telecommunications carriers the duty to file tariffed rates for regulated communications services and to pay the tariffed rates for such services. Section 203(c) states that no carrier shall "charge, demand, collect, or receive a greater or less or different compensation, for such communication."

27. CenturyLink has engaged in an unlawful practice of refusing to pay Birch its tariffed rates for the interstate services it has used in violation of Section 203(c) of the Communications Act.

28. Birch has been, and continues to be, damaged by CenturyLink's refusal to pay the interstate 8YY Charges, switched access service charges, and PICCs it owes, plus interest and late fees as called for in the Birch FCC Access Tariff. Birch is entitled to recover these amounts or such other damages as may be established at trial.

29. Birch is entitled to recover its reasonable attorneys' fees pursuant to Section 206 of the Communications Act, 47 U.S.C. § 206.

## COUNT III

**(Section 201 of the Communications Act)**

30. Birch repeats, realleges, and incorporates herein by reference each and every allegation contained in paragraphs 1 to 29 of this Complaint as if fully set forth herein.

31. CenturyLink is required to pay the Birch interstate 8YY Charges, switched access service charges, and PICCs as set forth in the Birch FCC Access Tariff. Despite due demand, CenturyLink has failed to pay the interstate 8YY Charges, switched access service charges, and PICCs it owes under the Birch FCC Access Tariff and the associated interest and late fees.

32. Section 201(b) of the Communications Act, 47 U.S.C. § 201, imposes upon telecommunications carriers the duty that their practices in connection with communications services be "just and reasonable."

33. CenturyLink has engaged in unreasonable, unjust and unlawful self-help by refusing to pay Birch its tariffed rates for the interstate services it has used in violation of Section 201(b) of the Communications Act.

34. Birch has been, and continues to be, damaged by CenturyLink's refusal to pay the interstate 8YY Charges, switched access service charges, and PICCs it owes, plus interest and

late fees as called for in the Birch FCC Access Tariff. Birch is entitled to recover these amounts or such other damages as may be established at trial.

35. Birch is entitled to recover its reasonable attorneys' fees pursuant to Section 206 of the Communications Act, 47 U.S.C. § 206.

## COUNT IV

**(Breach of Intrastate Tariffs)**

36. Birch repeats, realleges, and incorporates herein by reference each and every allegation contained in paragraphs 1 to 35 of this Complaint as if fully set forth herein.

37. Birch has provided intrastate switched access services to CenturyLink. CenturyLink is required to pay Birch's intrastate switched access service charges as set forth in the Birch intrastate tariffs in each of the states in the BellSouth Region, other than North Carolina.

38. Despite due demand, CenturyLink has failed to pay in full the intrastate switched access service charges it owes under the Birch intrastate access tariffs and the associated interest and late fees.

39. Birch has been, and continues to be, damaged by CenturyLink's refusal to pay the intrastate switched access service charges it owes, plus interest and late fees as called for in the Birch intrastate access tariffs. Birch is entitled to recover these amounts or such other damages as may be established at trial.

## COUNT V

**(Quantum Meruit and Unjust Enrichment)**

40. Birch repeats, realleges, and incorporates herein by reference each and every allegation contained in paragraphs 1 to 39 of this Complaint as if fully set forth herein.

41. Birch provided, and continues to provide, valuable interstate and intrastate services to CenturyLink.

42. CenturyLink has accepted, used, and enjoyed the interstate and intrastate services that Birch has provided and continues to provide.

43. The reasonable and fair market value of the services for which CenturyLink has refused to pay is established by the rates set forth in the FCC Access Tariff and intrastate access tariffs of Birch.

44. CenturyLink would be unjustly enriched if it were permitted to use the Birch interstate and intrastate services without paying the reasonable value thereof.

45. Birch, accordingly, is entitled to recover the reasonable value of the interstate and intrastate services it provided and provides to CenturyLink and the associated interest and late fees.

## COUNT VI

**(Declaratory Judgment)**

46. Birch repeats, realleges, and incorporates herein by reference each and every allegation contained in paragraphs 1 to 45 of this Complaint as if fully set forth herein.

47. A present, actionable, and justifiable controversy exists with respect to the legal rights between Birch and CenturyLink. Such controversy arises under the Communications Act and common law. Birch cannot obtain relief other than through litigation.

48. CenturyLink's refusal to pay tariffed and invoiced charges for its use of the Birch interstate and intrastate services, and CenturyLink's refusal to pay associated interest and late fees, are ongoing and repeated practices.

49. Absent declaratory judgment, CenturyLink will continue its wrongful practices of refusing to pay Birch's lawful charges for interstate and intrastate services from which CenturyLink benefits.

50. It would be unduly burdensome and inefficient for Birch to bring new actions for damages each time CenturyLink wrongfully refuses to pay an invoice or does not pay an invoice in full.

51. Accordingly, Birch is entitled to a declaratory judgment, and such further relief based upon that declaratory judgment, as the Court deems proper pursuant to 28 U.S.C. §§ 2201 and 2202, determining that Birch:

   a. has lawfully charged CenturyLink for services rendered in the provision of interstate and intrastate services, either pursuant to the Birch FCC Access Tariff, the Birch intrastate access tariffs, or in accordance with principles of equity;

   b. CenturyLink has violated the Birch FCC Access Tariff and Birch intrastate access tariffs by refusing and failing to pay in full invoiced interstate and intrastate charges and associated late fees and interest; and

   c. CenturyLink is obligated to make timely payment of these charges as they become due.

**PRAYER FOR RELIEF**

**WHEREFORE**, Birch respectfully requests that this Court enter judgment against CenturyLink:

(1) for all damages incurred by Birch, in an amount to be determined at trial, but no less than the invoiced charges that CenturyLink owes Birch, together with associated tariffed interest and late fees;

(2) for Birch's reasonable attorneys' fees and the costs of this action pursuant to 47 U.S.C. § 206;

(3) for declaratory relief as set forth above; and

(4) for such other and further relief as this Court deems just and proper.

Dated:  September 29, 2017　　　　　　　Respectfully submitted,

*/s/ Henry E. Gallagher, Jr.*
Henry E. Gallagher, Jr. (#495)
Mary Akhimien (#5448)
CONNOLLY GALLAGHER LLP
The Brandywine Building
1000 West Street, Suite 1400
Wilmington, DE 19801
(302) 757-7300
hgallagher@connollygallagher.com
makhimien@connollygallagher.com

*Attorneys for Plaintiff, Birch Communications, Inc.*